SEGOVIA, Appellant,

v.

LIKENS, Appellee.

[Cite as *Segovia v. Likens,* 179 Ohio App.3d 256, 2008-Ohio-5896.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–283.

Decided Nov. 13, 2008.

258

Roger Warner, for appellant.

Stephen P. Ames, for appellee.

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, Ricardo J. Segovia, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which granted a motion filed by defendant-appellee, Jackie L. Likens, to enforce a prior finding of contempt against Ricardo.

{¶ 2} On July 16, 2004, Ricardo filed a complaint to establish parental rights and responsibilities concerning two minor children born to Ricardo and Jackie. Although the parties subsequently engaged in extended litigation, we identify and discuss only those developments relevant to the issues before us in this appeal.

{¶ 3} On August 22, 2006, Jackie filed a motion to show cause and for attorney fees. In it, she asked for an order requiring Ricardo to appear and show cause why he should not be held in contempt for failing to comply with a prior court order concerning Jackie's phone access to the boys during Ricardo's summer parenting time. Jackie also asked for an award of attorney fees.

{¶ 4} On August 28, 2007, Jackie filed another motion to show cause and for attorney fees. In it, she again asked for an order requiring Ricardo to appear and show cause why he should not be held in contempt for failing to comply with a prior court order concerning summer parenting time. Specifically, Jackie alleged that Ricardo failed to use the day-care provider, inform her of the children's whereabouts, and get the children to their extracurricular activities.

{¶ 5} On August 28, 2007, the court issued an entry requiring Ricardo to appear and show cause as to why he should not be held in contempt. The clerk's office issued to Ricardo a form summons and order to appear. Pursuant to R.C. 2705.031, the summons and order contained "**NOTICE**" that (1) failure to appear could result in an order for arrest or an order for the payment of support, (2) the recipient has a right to counsel and, if indigent, a right to appointed counsel, (3) the court could refuse to grant a continuance for the purpose of obtaining counsel, and (4) a finding of guilt for contempt could result in specific penalties, including a jail sentence.

{¶ 6} Although the contempt hearing was initially scheduled for September 5, 2007, the court granted a continuance and set the hearing for October 10, 2007. The purpose of the continuance was to allow counsel to address all pending

contempt motions. (The parties thereafter settled a third contempt motion, dated March 15, 2006.)

{¶ 7} On October 23, 2007, the magistrate issued a decision concerning the August 22, 2006, and August 28, 2007 motions for contempt. The decision indicates that both parties had appeared with counsel at a hearing before the magistrate on October 10, 2007. The decision states:

[Jackie's] motion for contempt, filed August 22, 2006, is granted. [Ricardo] is found in contempt and sentenced to fifteen (15) days in jail suspended on the condition that he purge herself [sic] of his contempt by allowing [Jackie] one hour of additional telephone contact with each child during his next parenting time weekend. This makeup contact shall be at [Jackie's] expense. This makeup telephone time is in addition to the regular Sunday telephone contact; [Jackie's] motion for contempt, filed August 8, 2007, is dismissed because she did not prove her case by clear and convincing evidence;

[Ricardo] shall pay [Jackie] the sum of $500.00 for attorney fees within sixty (60) days of approval of this decision by the Court.

{¶ 8} The trial court adopted the magistrate's decision on October 23, 2007.

{¶ 9} Jackie filed four motions on January 4, 2008: a motion for psychological examination; a motion to suspend visitation; a motion to show cause and for attorney fees; and a motion to enforce. Only the latter two motions are important for our purposes.

{¶ 10} In her motion to show cause and for attorney fees, Jackie asked the court for an order requiring Ricardo to appear and show cause why he should not be held in contempt for failing to comply with the court's October 23, 2007 order because Ricardo had not paid her $500 for attorney fees. The court granted the motion and ordered Ricardo to appear at a contempt hearing on April 17, 2008. And regarding that April 17, 2008 hearing, the clerk's office issued to Ricardo a form summons and order to appear, which also contained the statutory "NOTICE" provisions concerning his right to counsel and possible penalties if he were to be found guilty of contempt.

{¶ 11} In her motion to enforce, Jackie asked for an order enforcing the 15–day jail sentence imposed in the October 23, 2007 order. She alleged that Ricardo had failed to allow her the additional telephone contact with the children. The record contains a "NOTICE OF HEARING" for a March 19, 2008 hearing. The notice was signed by, and presumably filed by, Jackie's counsel. The record does not contain a separate entry granting the motion and scheduling the hearing, nor does it contain a summons and order to appear.

{¶ 12} Ricardo appeared for the March 19 hearing. Following a statement by Jackie's counsel concerning the issues before the court, Ricardo "ask[ed] for a

continuance to seek legal counsel." He stated that he had received notice on January 9. The court denied the request, stating: "I'm going to deny your continuance because you've had two months and if you couldn't find one you could have at least given these folks the courtesy of giving them a call."

{¶ 13} Jackie testified that Ricardo had not allowed her additional telephone access to the boys during visitation. She stated that Ricardo had paid her the $500, which the October 23, 2007 order required him to pay within 60 days, but not until January 8, 2008, two weeks late.

{¶ 14} Ricardo testified that he could not recall being found in contempt for failing to allow telephone contact. When shown a copy of the court's October 23, 2007 order, Ricardo agreed that he had been found in contempt "[a]t some point."

{¶ 15} Following his testimony, Ricardo again stated that he was not prepared for the hearing. He stated:

I've been in touch with an attorney trying to work on retaining an attorney but I have not been able to do so as of yet. And part of it does pertain to this case that's going on with the contempt on the telephone calls that the information and what happened basically, in my opinion and others is not true and I'm working on trying to see about appealing that.

{¶ 16} He also said that he intended to call a witness to speak concerning the phone calls, which he said did occur, but that he had not had time to retain an attorney to "bring this all out into the open."

{¶ 17} The trial court stated that it would enforce five days of the suspended 15–day contempt sentence and suspend the remaining ten days. In response, the guardian ad litem asked whether the court would consider accommodating the parenting schedule. Ricardo asked whether it would be possible to serve the time on weekends when he did not have parenting time. The court then stated that it would order six days served on two full weekends that did not conflict with Ricardo's parenting schedule. The court's final judgment entry, issued March 20, 2008, is consistent with these statements.

{¶ 18} Ricardo filed a timely appeal. He raises the following assignments of error:

### FIRST ASSIGNMENT OF ERROR

The trial court erred as a matter of law by refusing [Ricardo's] request for a continuance to obtain counsel and not determining if he was indigent and eligible for court appointed counsel for a person facing a contempt charge which resulted in jail time in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I § 10 and 16 of the Ohio Constitution.

### SECOND ASSIGNMENT OF ERROR

It was an abuse of discretion for the trial court to deny [Ricardo's] request for a continuance to obtain counsel.

### THIRD ASSIGNMENT OF ERROR

[Ricardo] was denied a fair hearing in violation of his right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and the equivalent provisions of the Ohio Constitution.

{¶ 19} In his first assignment of error, Ricardo argues that the court denied him his constitutional rights by denying his request for a continuance to obtain counsel and failing to determine whether he was indigent. We disagree.

{¶ 20} R.C. 2705.031(B)(2) authorizes anyone who has rights under a parenting time or visitation order to "initiate a contempt action for a failure to comply with, or an interference with, the order or decree." In such an action, "the accused shall appear upon the summons and order to appear that is issued by the court." R.C. 2705.031(C). R.C. 2705.031(C) also requires that the summons and order contain specific notices concerning the right to counsel, continuances, and potential penalties.

{¶ 21} This court has defined contempt as disobedience of a court order or conduct that brings the administration of justice into disrespect or that " 'tends to embarrass, impede or obstruct a court in the performance of its functions.' " *Howell v. Howell,* Franklin App. No. 04AP–436, 2005-Ohio-2798, 2005 WL 1331851, ¶ 19, quoting *In re Contempt of Morris* (1996), 110 Ohio App.3d 475, 674 N.E.2d 761, citing *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 15, 520 N.E.2d 1362. The purpose of the law of contempt is to ensure the effective administration of justice. *Howell* at ¶ 19, citing *In re Contempt of Morris* at 479, 674 N.E.2d 761.

{¶ 22} Courts categorize contempt as direct or indirect. *Sansom v. Sansom,* Franklin App. No. 05AP–645, 2006-Ohio-3909, 2006 WL 2130717, ¶ 23, citing *Byron v. Byron,* Franklin App. No. 03AP–819, 2004-Ohio-2143, 2004 WL 894600, ¶ 12. Direct contempt occurs in the presence of the court and obstructs the administration of justice. R.C. 2705.01. Indirect contempt occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders. *Byron,* citing *State v. Drake* (1991), 73 Ohio App.3d 640, 643, 598 N.E.2d 115. Here, Ricardo allegedly failed to comply with the court's order regarding his parenting time, actions that occurred outside the presence of the court. Therefore, we characterize these acts as indirect contempt.

{¶ 23} Courts also characterize contempt as criminal or civil, depending on the nature of the contempt sanctions. Criminal contempt imposes sanctions that are punitive in nature and are designed to punish the party for past failures

to comply with the court's order. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 555, 740 N.E.2d 265. Civil contempt, in contrast, is remedial or coercive in nature and will be imposed to benefit the complainant. *Delawder v. Dodson*, Lawrence App. No. 02CA27, 2003-Ohio-2092, 2003 WL 1950371, ¶ 11.

{¶ 24} Ohio courts have concluded that the most important consequence arising from this characterization of contempt as civil or criminal " 'is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings.' " *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 252, 18 O.O.3d 446, 416 N.E.2d 610, quoting *State v. Kilbane* (1980), 61 Ohio St.2d 201, 205, 15 O.O.3d 221, 400 N.E.2d 386. These safeguards include the due process right to notice of the charges and an opportunity to be heard.

{¶ 25} Procedural due process applies to criminal contempt proceedings and requires "that one charged with criminal contempt of court has the right to be represented by counsel." *State v. Brandon*, Greene App. No. 06–CA–137, 2008-Ohio-403, 2008 WL 308455, ¶ 12, citing *In re Davis* (1991), 77 Ohio App.3d 257, 602 N.E.2d 270, and *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 332, 16 OBR 377, 475 N.E.2d 1284, citing *In re Oliver* (1948), 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682. Thus, in a criminal contempt proceeding, "an unrepresented contemnor must be informed of his right to counsel and that counsel will be appointed to represent him if he is indigent, and he must knowingly and voluntarily waive the right." *Brandon* at ¶ 12, citing *Garfield Hts. v. Stefaniuk* (1998), 127 Ohio App.3d 293, 296–297, 712 N.E.2d 808.

{¶ 26} In our view, however, the distinction between civil and criminal contempt is not very helpful for determining whether the right to counsel attaches to a particular proceeding. Instead, "actual imprisonment remains the line defining the constitutional right to appointment of counsel." *Renshaw v. Renshaw* (Oct. 12, 2000), Guernsey App. No. 00 CA 05, 2000 WL 1528635, relying on *Lassiter v. Dept. of Social Servs.* (1981), 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640. See also *Poptic v. Poptic*, Butler App. No. CA2005–06–145, 2006-Ohio-2713, 2006 WL 1493262, ¶ 15 ("[w]here incarceration is a possible sanction for indirect contempt, criminal or civil, the accused contemnor generally has the rights of a criminal defendant"); *In re Estate of Straub* (Feb. 13, 1992), Ross App. No. 1728, 1992 WL 37781 (questioning "the validity of any distinction between criminal contempt and civil contempt when a person faces incarceration").

{¶ 27} Here, the court's October 23, 2007 order sentenced Ricardo to 15 days in jail, but suspended that sentence so that Ricardo could purge the contempt. The court's purpose was clearly coercive, and, therefore, we may characterize the

October 23, 2007 order as an indirect civil contempt order. Nevertheless, Ricardo received a summons and order that advised him of a right to counsel, including a right to appointed counsel, if necessary. Ricardo exercised his right to counsel, and he appeared with counsel at the October 10, 2007 hearing.

{¶ 28} Ricardo did not receive the same notices regarding the March 19, 2008 hearing, however. He received notice of the time and place of the hearing, and he had an opportunity to be heard on the purge issue. We may conclude, then, that Ricardo received some measure of due process.

{¶ 29} But the notice regarding the March 19 hearing did not advise Ricardo of a right to counsel, including a right to appointed counsel, nor of the other notices required under R.C. 2705.031(C). As we noted, Ricardo appeared at the March 19, 2008 hearing without counsel, he stated that he had been unable to obtain counsel, and he requested a continuance to retain counsel.

{¶ 30} Jackie argues, however, that Ricardo's due process rights were satisfied because he received notice concerning his right to counsel and the possible penalties prior to the October 10, 2007 hearing, counsel appeared at that hearing, and Ricardo did not file objections to the magistrate's finding of contempt. In contrast to the October 10, 2007 hearing, Jackie argues, the March 19, 2008 hearing "was not a contempt charge hearing, it was a hearing on a motion to enforce a prior finding of contempt." At least one Ohio court agrees.

{¶ 31} In *Wibley v. Shaw* (Apr. 5, 1988), Delaware App. No. 87–CA–15, 1988 WL 38037, the Fifth District Court of Appeals addressed a similar issue, but on statutory grounds. In that case, the trial court found a father guilty of contempt for failure to pay child support. The court sentenced him to ten days in jail, but suspended the sentence to allow the father to purge the contempt by making payments. When the father again fell behind on payment, the mother moved to enforce the suspended sentence, and the court enforced the sentence.

{¶ 32} On appeal, the father argued that the trial court lacked jurisdiction over him because he had not been served with the proper summons and notices required under R.C. 2705.031. The appellate court disagreed. Instead, the court found that the notice for the hearing on the mother's motion to enforce "was not for a proceeding, in the words of R.C. 2705.031, to 'initiate a contempt action for failure to pay the support.'" The hearing to enforce the suspended sentence "was simply to offer [the father] an opportunity to show why he was unable to comply with the court's condition on his suspension." In the end, the appellate court concluded that it was not necessary for the trial court to find him in contempt on the information presented at the enforcement hearing, "but only to find that he had not taken the necessary action to purge himself of the previous contempt conviction."

{¶ 33} The Fifth District came to a similar conclusion more recently in *Burge v. Burge,* Licking App. No. 05–CA–38, 2005-Ohio-6657, 2005 WL 3446325, which raised constitutional issues. In that case, the trial court found the husband in indirect civil contempt for failure to comply with a divorce decree. The court suspended the husband's jail sentence on the condition that he take certain actions to purge the contempt. When the husband failed to meet those conditions, the trial court imposed the sentence.

{¶ 34} On appeal, the husband argued that the trial court violated his due process rights applicable in criminal contempt proceedings. The appellate court concluded, however, that the husband's "failure to purge does not convert the trial court's finding him in indirect civil contempt to an action for criminal contempt merely based upon the court's imposing his previously suspended sentence." Id. at ¶ 28.

{¶ 35} The Fifth District reached a contrary conclusion in *Hoffman v. Hoffman* (Nov. 2, 1998), Tuscarawas App. No. 98AP030073, 1998 WL 819775. In *Hoffman,* the trial court found the appellant in contempt of a court order, sentenced him to five days in jail, and gave him the opportunity to purge the contempt. Five months later, the trial court found that the appellant had failed to purge the contempt and ordered him to serve the five days. The appellant appealed both judgments.

{¶ 36} As to the first judgment, which found him in contempt, the Fifth District considered that the trial court had allowed the appellant's counsel to withdraw and then required the appellant to proceed without counsel. "Because appellant was facing the possibility he might be sentenced to jail," however, the appellate court found that "the trial court, once it allowed counsel to withdraw upon a motion initiated by counsel, had an obligation to allow appellant to obtain new counsel." The record did not "demonstrate any waiver of the right to counsel by appellant, let alone a knowing or voluntary waiver." Therefore, the appellate court found that the first proceeding violated the appellant's right to counsel. As to the second judgment, which imposed the five-day sentence for his failure to purge the contempt, the appellate court stated only briefly that "the trial court erred," and the court sustained appellant's assignment of error "for the same reasons."

{¶ 37} The Fifth District articulated similar reasoning in *Renshaw,* Guernsey App. No. 00 CA 05, 2000 WL 1528635, albeit in dicta. In that case, an individual faced charges of contempt for failure to obey a court order requiring her to pay child support and seek employment. She requested court-appointed counsel at the hearing, and the trial court refused. The trial court thereafter found her in contempt and sentenced her to 30 days in jail, but suspended the sentence on the condition that she begin paying child support. In upholding the trial court's

refusal to appoint counsel, the Fifth District stated that if the appellant complied with the trial court's order, she would not be deprived of her physical liberty by imprisonment. "However, if appellant fails to comply with the trial court's order, she would be required to appear for a show cause hearing at which she would face the possibility of jail time." At that point, the court concluded, "appellant would be entitled to court-appointed counsel provided she qualifies under the financial guidelines." The Fifth District subsequently relied on this reasoning to conclude that an individual had a right to counsel at a contempt hearing resulting in a suspended jail sentence, *Burton v. Hootman,* Ashland App. No. 06–COA–016, 2007-Ohio-521, 2007 WL 404359, a case Ricardo offers in support of his position here.

{¶ 38} We conclude, however, that *Hoffman, Renshaw,* and *Burton* are all distinguishable from the case before us. Here, Ricardo received notice of his right to counsel prior to the October 10, 2007 hearing, when he was found in indirect civil contempt and sentenced accordingly. Unlike the appellants in *Hoffman, Renshaw,* and *Burton,* Ricardo exercised his right to counsel, and counsel represented him at the initial contempt hearing.

{¶ 39} The fact that Ricardo failed to meet the purge conditions to avoid enforcement of his sentence does not convert the March 19, 2008 hearing into a criminal contempt proceeding at which Ricardo faced a *new* risk of imprisonment. The only issue before the trial court at the March 2008 purge hearing was whether Ricardo had met the purge conditions imposed following the October 2007 contempt hearing, i.e., whether he had allowed Jackie additional telephone access to the children during his parenting time. Finding that Ricardo had not purged the contempt, the trial court did not impose a new sentence. Rather, the court enforced the sentence it had already imposed.

{¶ 40} In reaching this conclusion, we acknowledge the importance of the rights at issue before us. In this context, an individual's right to counsel, if it exists, arises from the Due Process Clause of the Fourteenth Amendment and principles of fundamental fairness. In *Lassiter,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, the Supreme Court of the United States drew from its precedents the presumption that an indigent litigant has a right to appointed counsel "when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." *Lassiter* at 27, 101 S.Ct. 2153, 68 L.Ed.2d 640.

{¶ 41} In *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18, the Supreme Court established the following three factors for determining what due process requires in a particular case: (1) the private interests at stake; (2) the government's interest; and (3) the risk that the procedures used will lead to erroneous decisions. *Lassiter* at 27, 101 S.Ct. 2153,

68 L.Ed.2d 640. "We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." Id.

{¶ 42} We consider, too, that a litigant's right to counsel diminishes as his personal liberty interest diminishes. *Lassiter*, 452 U.S. at 26, 101 S.Ct. 2153, 68 L.Ed.2d 640. For example, in *Morrissey v. Brewer* (1972), 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the Supreme Court of the United States addressed the issue of appointed counsel in a parole-revocation hearing. The court observed, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey* at 480, 92 S.Ct. 2593, 33 L.Ed.2d 484. See also *State ex rel. Stamper v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 85, 578 N.E.2d 461 (relying on *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, and holding that parolee had no right to counsel at parole-revocation hearing where no substantial, complex, or difficult factors exist).

{¶ 43} In our view, a balancing of interests in this case leads to the conclusion that the process due a contemnor at a purge hearing does not include the right to appointed counsel. To be sure, Ricardo faced the risk of losing his freedom following the purge hearing, but the trial court had already conditioned Ricardo's freedom on his continued compliance with the court's order. Thus, like a parolee subject to having his parole revoked, Ricardo's liberty interest was a diminished one.

{¶ 44} Moreover, as we have stated repeatedly, Ricardo had been given a full opportunity, with counsel, to defend against the contempt charge in the first instance. Ricardo did not object to or otherwise appeal from that court's finding of contempt. Thus, we may afford it sufficient reliability to support a sentence. See *Alabama v. Shelton* (2002), 535 U.S. 654, 665, 667, 122 S.Ct. 1764, 152 L.Ed.2d 888 (stating that the court's inquiry for determining whether an indigent defendant facing imposition of a suspended jail sentence had a Sixth Amendment right to counsel at a probation violation hearing focuses on the stage of the proceedings where a defendant's "guilt was adjudicated, eligibility for imprisonment established, and prison sentence determined" in order to determine "whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration"). In contrast, the only question at issue in the purge hearing—whether Ricardo purged the contempt—was a limited one and presented a low risk of an erroneous decision by the trial court.

{¶ 45} Finally, weighing against Ricardo's interests is the trial court's interest in ensuring prompt compliance with its orders. Also at issue in this case is the court's need to deal flexibly with repeated contemnors by offering an opportunity to purge a contempt finding, but also to enforce a suspended sentence swiftly if the contemnor fails to purge.

{¶ 46} For all these reasons, we conclude that the trial court did not violate Ricardo's constitutional rights by denying his request for a continuance to obtain counsel or by failing to determine whether he was indigent. Therefore, we overrule Ricardo's first assignment of error.

{¶ 47} In his second assignment of error, Ricardo argues that the trial court abused its discretion by not granting his request for a continuance. We disagree.

{¶ 48} The decision to grant or deny a continuance lies within the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078. We will not reverse a trial court's decision regarding a request for continuance absent an abuse of that discretion. *Fiocca v. Fiocca*, Franklin App. No. 04AP–962, 2005-Ohio-2199, 2005 WL 1055878, ¶ 6. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 450 N.E.2d 1140.

{¶ 49} When reviewing a trial court's denial of a motion for continuance we weigh the trial court's interest in controlling its own docket against the potential prejudice to the moving party. *Fiocca*, 2005-Ohio-2199, 2005 WL 1055878, ¶ 6, citing *Unger*, 67 Ohio St.2d at 67, 21 O.O.3d 41, 423 N.E.2d 1078. And, when denying a request for a continuance, a trial court should note the following considerations:

[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger*, 67 Ohio St.2d at 67–68, 21 O.O.3d 41, 423 N.E.2d 1078.

{¶ 50} Applying these factors here, we consider, first, the length of the delay requested. While Ricardo indicated, and the guardian ad litem confirmed, that he had been trying to find an attorney to handle all the motions pending against him, Ricardo did not request a specific length of time. When Ricardo stated that he was "working on" getting an attorney that would assist with presenting a witness on his behalf, the court responded: "Well, you had two months and if you

don't have the money now, I don't know if you're going to have the money, frankly, for an attorney."

{¶ 51} As for continuances, neither party had requested a continuance of the March 19 hearing prior to Ricardo's request. However, the record reflects numerous continuances of prior hearings, including Ricardo's request to continue the October 10, 2007 contempt hearing. As for the inconvenience to the other participants, we note that Jackie, her counsel, her witness, and the guardian ad litem attended the hearing and were prepared to go forward.

{¶ 52} On its face, Ricardo's request was for a legitimate reason—to obtain counsel. The trial court also considered, however, that Ricardo could have made the request much earlier and could have reduced the inconvenience to the court and the other participants.

{¶ 53} Finally, we consider the unique facts of this case. A review of the complete record reflects ongoing issues regarding Ricardo's cooperation with the court and his failure to comply with the court's orders. The October 23, 2007 order clearly required Ricardo to pay to Jackie $500 for her attorney fees, yet he did not make the payment until after she had filed a motion for a contempt finding against him. Ricardo had also failed to appear at two prior hearings, and one failure resulted in the magistrate's issuing a capias for his appearance.

{¶ 54} We consider, too, that the court had already found Ricardo in contempt for his failure to obey the court's prior orders. The purpose of the March 19 hearing was limited to the sole issue of determining whether Ricardo had allowed additional telephone access to the children, as expressly required in the October 23, 2007 order. Although he had difficulty recalling the specific details of the prior contempt finding, the motion to enforce gave him actual notice of this limited purpose.

{¶ 55} We acknowledge that the trial court's findings resulted in enforcement of the jail sentence against Ricardo. Nevertheless, given the facts of this case and Ricardo's repeated recalcitrance, we cannot conclude that the trial court abused its discretion by denying his last-minute request for a continuance. Therefore, we overrule Ricardo's second assignment of error.

{¶ 56} In his third assignment of error, Ricardo asserts that he was denied a fair hearing. In his brief, Ricardo asserts that the court allowed Jackie's counsel to raise issues outside the motion to enforce and to mischaracterize the evidence. He also asserts that the court did not allow Ricardo to cross-examine Jackie or to present himself as a witness. We disagree with Ricardo's characterization of the hearing.

{¶ 57} The transcript of the hearing reflects that the trial court offered Ricardo the ability to present his own testimony about the events surrounding telephone

access to the children on the date in question. He presented his side of the story and cross-examined Jackie's witness, his brother. In the end, before imposing sentence, the court accommodated the parenting schedule and limited Ricardo's sentence to six weekend days when he had no parenting responsibilities. Based on our review of the transcript, we conclude that the hearing was fair, and we overrule Ricardo's third assignment of error.

{¶ 58} In conclusion, we overrule Ricardo's three assignments of error. We affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

Judgment affirmed.

McGRATH, P.J., and T. BRYANT, J., concur.

T. BRYANT, J., retired, of the Third Appellate District, sitting by assignment.