**WOLFORD, n.k.a. Burmester, Appellee,**

v.

**WOLFORD, Appellant.**

[Cite as *Wolford v. Wolford,* 184 Ohio App.3d 363, 2009-Ohio-5459.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 08CA27.

Decided Sept. 30, 2009.

James R. Kingsley, for appellee.

Earl E. Wolford, pro se.

KLINE, Presiding Judge.

{¶ 1} Earl E. Wolford ("Earl") appeals the judgment of the Pickaway County Court of Common Pleas, which made several decisions favoring his former spouse, Wendy L. Wolford, n.k.a. Burmester ("Wendy"). On appeal, Wolford first contends that the trial court erred when it entered a finding of contempt against him because he was not served with a summons and an order to appear as required by law. Because the Civil Rules generally do not apply to contempt proceedings, and because the trial court failed to comply with R.C. 2705.031, we agree. Second, Earl contends that the trial court erred when it granted him less visitation time than the local rules provide. We disagree, finding that the trial court did not abuse its discretion. Third, Earl contends that the trial court abused its discretion when it determined he was voluntarily unemployed. We disagree. And fourth, Earl contends that he was afforded ineffective assistance of counsel. We disagree, finding that he was not entitled to an attorney for all the civil issues except for his contempt hearing, and we find that issue moot based on our resolution of his first assignment of error. Accordingly, we affirm in part and reverse in part the judgment of the trial court. We remand this cause to the trial court for further proceedings consistent with this opinion.

I

{¶ 2} Wendy and Earl married in 1996. During their marriage, the couple had a daughter. On July 19, 2000, Wendy filed for divorce. As a result of the divorce proceedings and an agreed order, the court split custody of the daughter between both parents.

{¶ 3} Wendy then met and married Peter Burmester, a Canadian citizen, and moved to Ontario. As a result, the court entered an amended agreed custody order.

{¶ 4} At the time of his divorce, Earl worked as a truck driver for Red Sky Express, a company he owned and operated. In the fall of 2005, Red Sky Express was dissolved. Earl then worked part-time as a driver for another trucking company. On January 26, 2006, Earl attempted to release a locking lever while on the job, and as he did so, he tore a tendon in his arm. The injury has substantially reduced the utility of his arm. After the injury, Earl was no longer able to work as a trucker, and he sold his last remaining truck for the amount remaining on its lease.

{¶ 5} Earl attempted to work at Allied Automotive Group starting on November 29, 2007, as a shop mechanic at $16.28 an hour. According to him, he resigned from the position after working at Allied for about a month because he was not physically capable of working there.

{¶ 6} The parties filed several motions. Earl filed a motion to prospectively and retroactively reduce child support on May 17, 2006. More than a year later, on June 29, 2007, Wendy filed a motion to compel as well as a motion for contempt. On January 10, 2008, Wendy filed a motion to clarify the amended parenting order.

{¶ 7} These motions came before the magistrate on January 29, 2008, and the magistrate then issued her ruling. Earl objected to the findings of the magistrate. However, the trial court adopted the magistrate's findings with the exception of the magistrate's worksheet calculation.

{¶ 8} Wolford appeals the decision of the trial court and asserts the following four assignments of error: (I) "It was reversible error for the Court to grant Plaintiff's Motion for Contempt"; (II) "It was reversible error for the Court to grant Plaintiff's Motion to Clarify visitation"; (III) "It was an Abuse of Discretion in the matter of child support calculations because child support is not equitable or correct based on evidence and testimony"; and (IV) "Inadequate Counsel."

## II

{¶ 9} Earl contends in his first assignment of error that he was not properly served and therefore the trial court's finding of contempt was error. Specifically, Earl maintains that the failure to serve him personally violated both Civ.R. 5(A) and the local rules of the Pickaway County Court of Common Pleas. However, Wendy argues, regardless of service, Earl appeared at the hearing and provided

a full defense to the accusation of contempt. Wendy therefore concludes that any defect in service is harmless.

{¶ 10} This issue raises a question of law, which we review de novo. See, e.g., *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208.

{¶ 11} Ordinarily, "[w]henever * * * service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court." Civ.R. 5(B). However, contempt proceedings generally fall outside of the scope of the Ohio Rules of Civil Procedure. *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 333, 16 OBR 377, 475 N.E.2d 1284; see also *First Bank of Marietta v. Mascrete, Inc.* (1998), 125 Ohio App.3d 257, 268, 708 N.E.2d 262. Here, a specific statute applies.

{¶ 12} R.C. 2705.031 provides that "[i]n any contempt action, initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court." R.C. 2705.031(C). In order for this provision to apply, the case must be a Title IV–D case. R.C. 2705.031(B)(1). A Title IV–D case is a case where "the child support enforcement agency is enforcing the child support order pursuant to Title IV–D of the Social Security Act." R.C. 3125.01. "All child support cases that are eligible for IV–D services and are administered by a [Child Support Enforcement Agency ("CSEA")] are considered IV–D cases." *Collins v. Collins* (1998), 127 Ohio App.3d 281, 284, 712 N.E.2d 800, citing former Ohio Adm.Code 5101:1–29–05(A)(1)(b).

{¶ 13} Here, the docket reflects at least one motion for contempt, judgment, wage assignment, bank-account deduction, or posting of bond by the Pickaway County Job and Family Services, Child Support Division, i.e., CSEA. The fact that an attorney for one of the parties filed the current motion for contempt is not determinative because "the contempt action [in a Title IV–D case] for failure to pay support also may be initiated by an attorney retained by the party who has the legal claim." R.C. 2705.031(B)(1). Therefore, this case is a Title IV–D case. Consequently, the contempt motion in this case should have complied with R.C. 2705.031, and the contempt proceedings should have been instituted by the issuance of a summons and an order to appear that contained the mandatory cautions enacted at R.C. 2705.031(C)(1) through (4). That is, the summons must include "(1) [n]otice that failure to appear may result in the issuance of an order of arrest, and in cases involving alleged failure to pay support, the issuance of an order for the payment of support by withholding an amount from the personal earnings of the accused or by withholding or deducting an amount from some other asset of the accused; (2) [n]otice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons; (3)

[n]otice that the court may refuse to grant a continuance at the time of the hearing for the purpose of the accused obtaining counsel, if the accused fails to make a good faith effort to retain counsel or to obtain a public defender; [and] (4) [n]otice of the potential penalties that could be imposed upon the accused, if the accused is found guilty of contempt for failure to pay support or for a failure to comply with, or an interference with, a parenting time or visitation order or decree." R.C. 2705.031(C)(1) through (4).

{¶ 14} Wendy, in support of the lower court's decision, cites several cases for the contrary proposition. First, she cites this court's decision in *Evans v. Cole* (June 11, 2001), Jackson App. No. 00CA17, 2001 WL 688594. This court in *Evans* did consider *Rose v. Rose* (Mar. 31, 1997), Franklin App. No. 96APF09–1150, 1997 WL 142718. *Rose* applied the general contempt statute (R.C. 2705.03), but neither *Rose* nor *Evans* applied the more specific statute that applies in the present case (R.C. 2705.031). Furthermore, in *Evans,* this court noted that the "appellant was personally served with the motion." *Evans* at *2. Therefore, whatever the *Evans* case decided, it could not have been required to reach the question of whether a finding of contempt could stand absent personal service under R.C. 2705.031.

{¶ 15} Here, the trial court held the contempt hearing based on a motion and a notice of hearing served on Earl's attorney. The statute requires the court to issue a summons and order, and the statute further requires that the summons shall include a series of cautionary statements explaining the accused's rights. The statute prescribes a mandatory process to begin contempt proceedings on failure to pay child support, and a trial court's failure to follow this process deprives the accused of due process of law. *In re Yeauger* (1992), 83 Ohio App.3d 493, 498–499, 615 N.E.2d 289, quoting *Francis v. Francis* (Aug. 8, 1990), Lawrence App. No. 1925, 1990 WL 119250. Therefore, we find that the trial court erred.

{¶ 16} Accordingly, we sustain Earl's first assignment of error.

## III

{¶ 17} Earl contends in his second assignment of error that the trial court erred when it granted Wendy's motion to clarify visitation rights. He contends that the original order, prior to the clarifications, provides less visitation time than customary in Loc.R. 18.11(B) of the Court of Common Pleas of Pickaway County, General Division.

{¶ 18} "Appellate courts presume that a trial court's decision regarding the allocation of parental rights and responsibilities is correct." *Swain v. Swain,* Pike App. No. 05CA740, 2005-Ohio-4321, 2005 WL 1995388, at ¶ 29, citing *Miller*

*v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. "When a substantial amount of competent and credible evidence supports a child custody decision, we will not reverse that decision absent an abuse of discretion." *Swain* at ¶ 29.

{¶ 19} An abuse of discretion connotes more than an error of judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. In order to demonstrate an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

{¶ 20} Here, Wolford merely argues that the order conflicts with a Local Rule of the Pickaway County Court of Common Pleas. The Local Rule is in fact a form order for cases in which "parents liv[e] more than 150 miles apart." Loc.R. 18.11(B) of the Court of Common Pleas of Pickaway County, General Division. And the Local Rule itself indicates that "[c]hanges or modifications [of the plan] can be made by the Court, if the need for such is shown." Id.

{¶ 21} This case involves a shared-parenting arrangement in which the residential parent lives across an international border and far more than 150 miles away. It is hardly surprising that the court of common pleas reached a result out of the ordinary in a case involving facts that are out of the ordinary. Earl neither demonstrates that the trial court's ruling is unsupported by competent and credible evidence, nor establishes that the trial court abused its discretion. Earl provides no basis for this assignment of error other than his reference to the local rule.

{¶ 22} Accordingly, we overrule Earl's second assignment of error.

## IV

{¶ 23} Earl contends in his third assignment of error that the trial court erred when it concluded that he was voluntarily unemployed and that income should be imputed to him.

{¶ 24} "Initially, we note that a trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Wolfe v. Wolfe*, Franklin App. No.

04AP–409, 2005-Ohio-2331, 2005 WL 1118198, ¶ 7, citing *Woloch v. Foster* (1994), 98 Ohio App.3d 806, 810, 649 N.E.2d 918.

{¶ 25} The trial court concluded that Earl's "present physical disability prevents him from employment only as a truck driver. His own doctor finds he has reached [maximum medical improvement] or [maximum medical benefit] and social security finds that he can work. [He] voluntarily quit his job at Allied without a doctor's excuse. [He] did not produce an[y] current 'do not work orders.' * * * [He] is therefore voluntarily unemployed and could earn $16.28 an hour."

{¶ 26} Earl contends that a letter written by Christy Ash–Kukreja of the Ohio Bureau of Vocational Rehabilitation demonstrates that the trial court abused its discretion in finding him voluntarily unemployed. The letter indicates Earl could not continue working for Allied because of his injury. It also indicates that Earl attempted to get transferred to a less demanding position but was refused.

{¶ 27} The magistrate found the rejection by the social security administration persuasive. Earl filed extensive medical records with the magistrate in the proceedings below. Notwithstanding several hundred pages of medical documents, the magistrate concluded that there was no medical document that actually supported Earl's statement that he was physically incapable of working. The magistrate then concluded that Earl's self-serving statement that he was incapable of working was the only actual evidence that he was, in fact, not capable of working. The magistrate chose not to believe Earl. Trial courts are vested with discretion in cases like these precisely so they may make such determinations. We cannot say that the trial court abused its discretion in this regard.

{¶ 28} Earl also contends that the Pickaway County Court of Common Pleas does not have jurisdiction over whether he is or is not disabled, apparently because of the Americans with Disabilities Act of 1990 ("ADA"). Earl asserts that the Ohio Rehabilitation Services Commission is a state agency that serves people with disabilities. Among other documents, Earl filed a letter from the Ohio Bureau of Vocation Rehabilitation, "and that this specific document holds a date occurring *after* the first and initial decline of [Social Security Disability Insurance] benefits by the Social Security Administration * * * should be held as sufficient evidence of disability." Wolford concludes, therefore, that he is disabled under the ADA because he is "regarded as having * * * an impairment" that substantially limits one or more major life activities. Section 12102(2)(C), Title 42, U.S.Code.

{¶ 29} However, the question before the trial court was whether Earl was capable of working, rather than whether he had a disability. Even if we agree that Earl had a disability as defined by the ADA, that does not mean he was

incapable of finding work. One of the purposes of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Section 12101(b)(1), Title 42, U.S.Code. To enact this principle, Congress prohibited discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Section 12112(a), Title 42, U.S.Code. In other words, the thrust of the ADA is that disabled persons are often fully capable of participating in the work force and should be afforded reasonable accommodations to allow them to do so. Section 12112(b)(5)(A), Title 42, U.S.Code. Therefore, we find that even if Wolford is disabled for the purposes of the ADA, he still must demonstrate that he is incapable of finding or retaining employment.

{¶ 30} Finally, Earl appears to contend that the trial court erred because Wendy should have had income imputed to her. The magistrate apparently credited the testimony Wendy offered regarding whether she could obtain more work. Wendy testified that she did run a business entitled Burmester Legal Services but that the business had only one client, her current mother-in-law. Wendy said that she only worked four hours each day. And during cross-examination, she said that she could not work more than four hours a day because her mother-in-law did not need her and because she did not want to put her children in daycare. Therefore, the record contains competent evidence that Wendy worked as much as she could without placing her children in daycare. There was no evidence admitted that showed she could have worked more hours at a similar wage rate had she tried to do so. A trial court does not abuse its discretion when it declines to impute income to a spouse who has struck a balance between work and child care. See *Daugherty v. Daugherty,* Butler App. No. CA2004–04–097, 2005-Ohio-4056, 2005 WL 1864142, at ¶ 10.

{¶ 31} Accordingly, we overrule Wolford's third assignment of error.

V

{¶ 32} Wolford contends in his fourth assignment of error that his attorney rendered ineffective assistance of counsel. However, this proceeding is a civil matter and "[a] complaint of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration in its application when the attorney was employed by a civil litigant." *Phillis v. Phillis,* 164 Ohio App.3d 364, 2005-Ohio-6200, 842 N.E.2d 555, at ¶ 53.

{¶ 33} The only portion of the proceedings below that the right to counsel might attach to is the contempt proceeding. According to at least one court, the right to counsel attaches in civil-contempt actions when incarceration is a possible sanction. *Segovia v. Likens,* 179 Ohio App.3d 256, 2008-Ohio-5896, 901 N.E.2d 310, at ¶ 24–26. Of course, in this particular case, the Revised Code provides the accused with a right to counsel in contempt proceedings under R.C. 2705.031. See R.C. 2705.031(C)(2). We express no opinion on whether this statutory provision could provide relief here. We have already sustained Wolford's first assignment of error, and this has the effect of reversing the trial court's finding of contempt as well as mooting any question of inadequate counsel related to that finding. We therefore need not address this portion of Wolford's final assignment of error. See App.R. 12(A)(1)(c).

{¶ 34} Accordingly, we overrule Wolford's fourth assignment of error.

## VI

{¶ 35} In conclusion, we sustain Wolford's first assignment of error; overrule his second, third, and fourth assignments of error; and remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part<br>
and reversed in part,<br>
and cause remanded.

ABELE, J., concurs in part and dissents in part.

McFARLAND, J., concurs.