[Cite as *Liming v. Damos*, 2011-Ohio-2726.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| MICHAEL LIMING, | : | Case No. 10CA39 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| DENDAY DAMOS (fka LIMING), | : | |
| | : | **RELEASED 05/27/11** |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and E. Kelly Mihocik, Assistant Ohio State Public Defender, Columbus, Ohio, for appellant.

Keith M. Wiens, Athens County Child Support Enforcement Agency, Athens, Ohio, for Athens County Child Support Enforcement Agency.
_____

Harsha, P.J.

{¶1}   As a condition of his divorce, a court ordered Michael Liming to pay child support for his two minor children.  After Liming missed payments, the Athens County Child Support Enforcement Agency (CSEA) asked the court to find him in contempt.  At a hearing where Liming had counsel, the trial court found him in contempt and sentenced him to 30 days in jail.  However, the court suspended the sentence and gave Liming an opportunity to purge the contempt if he met certain conditions.  Later, CSEA alleged that Liming failed to comply with those conditions and asked the court to impose the previously suspended sentence.  At the "purge hearing," the court denied Liming's request for court-appointed counsel, found that Liming failed to purge the contempt order, and ordered Liming to serve ten days of his 30 day suspended sentence.  Liming now appeals the trial court's denial of his request for counsel.

{¶2}   Liming contends that he had a right to counsel at the purge hearing under the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.  However, the purge hearing constituted a civil proceeding, not a criminal proceeding, rendering these constitutional provisions inapplicable.  Therefore, we reject this argument.

{¶3}   Liming also contends that indigent civil contemnors who were represented by counsel at the time they were found in contempt have a procedural due process right to counsel at purge hearings under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.  However, a civil contemnor has a diminished liberty interest at a purge hearing because the trial court previously found him in contempt and imposed an appropriate sanction, which it simply deferred by conditioning his freedom on compliance with the court's order.  Moreover, requiring the government to provide counsel at all purge hearings would impose fiscal and administrative burdens on the state while there is little risk of erroneous decisions when the only remaining issue is the limited question of whether the contemnor purged the contempt.  Balancing these interests, we decline to create a categorical rule requiring the state to provide indigent civil contemnors, who were represented by counsel at their contempt hearing, with appointed counsel at purge hearings.

I. Facts

{¶4}   Liming and Denday Damos married in 1993 and had two children. When the couple divorced in 2005, the court named Damos the legal custodian and residential parent of the children and ordered Liming to pay child support.  In 2008, CSEA filed motions asking the court to find Liming in contempt for among other things, falling

behind in his child support payments.  Liming appeared at the contempt hearing represented by counsel.  The magistrate recommended that the trial court hold him in contempt, sentence him to 30 days in jail, suspend the sentence, and give Liming an opportunity to purge the contempt by complying with certain conditions for one year, such as paying his monthly child support obligation on time and making payments towards the arrearage each month.  Liming did not file objections to the magistrate's decision, and the trial court adopted the decision.

{¶5}    In 2009, CSEA claimed that Liming failed to purge the contempt and asked the court to impose the previously suspended jail sentence.  At the "purge hearing" on the motion, the court denied Liming's request for appointed counsel.  The court found that Liming did not pay his current child support obligation or arrearage obligation in March, May, August, October, and December 2009.  The court also found that he failed to pay his arrearage obligation from January to May 2010.  The court ordered Liming to serve ten days of the suspended sentence and continued to suspend the remaining 20 days of the sentence so long as Liming complied with certain conditions.  This appeal followed.

## II.  Assignments of Error

{¶6}    Liming assigns two errors for our review:

The trial court violated Mr. Liming's right to counsel when it refused to appoint Mr. Liming an attorney to represent him at a hearing in which a jail sentence was imposed.  Sixth and Fourteenth Amendments to the United States Constitution; Sections 10 and 16, Article I of the Ohio Constitution (July 28, 2010 Judgment Entry on Motion to Impose; Tr. 4.)

Because the June 2010 hearing to impose sentence was criminal in nature, Mr. Liming was entitled to counsel.  The trial court erred when it refused to appoint Mr. Liming counsel for that hearing.  Sixth and Fourteenth Amendments to the United States Constitution; Sections 10

and 16, Article I of the Ohio Constitution (July 28, 2010 Judgment Entry on Motion to Impose; Tr. 4.)

### III.   Constitutional Right to Appointed Counsel

{¶7}   In his first and second assignments of error, Liming contends that he had a right under the federal and state constitutions to appointed counsel at the purge hearing.  Liming cites the Sixth Amendment to the United States Constitution (made applicable to the states through the Fourteenth Amendment) and Section 10, Article I of the Ohio Constitution as a basis for this right.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."  Section 10, Article I of the Ohio Constitution, which outlines the rights of criminal defendants, provides:  "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel[.]"  Therefore, we must initially determine whether the purge hearing constituted a civil or criminal proceeding.  We begin our analysis with an examination of the underlying finding of contempt.

{¶8}   "Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority."  *McClead v. McClead*, Washington App. No. 06CA67, 2007-Ohio-4624, at ¶32 (per curiam), citing *Cassidy v. Cassidy*, Pike App. No. 03CA721, 2005-Ohio-3199, at ¶20.  "Contempt proceedings are often classified as *sui generis*, neither civil nor criminal.  However, most courts distinguish between civil and criminal contempt proceedings."  *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 2001-Ohio-15, 740 N.E.2d 265 (internal citation omitted).  The distinction largely depends upon the purpose of the sanction imposed.  Id.

{¶9}   Criminal contempt sanctions "are punitive in nature and are designed to

vindicate the authority of the court." *Eastern Local School Dist. Bd. of Educ. v. Eastern Local Classroom Teachers' Assn.*, Pike App. No. 03CA717, 2004-Ohio-1499, at ¶8, citing *State ex rel. Johnson v. County Court of Perry Cty.* (1986), 25 Ohio St.3d 53, 495 N.E.2d 16.  They "are usually characterized by an unconditional prison term or fine." Id., citing *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 254, 416 N.E.2d 610. "Civil contempt sanctions are remedial or coercive in nature and are for the benefit of the complainant."  Id., citing *Brown* at 253.  "Prison sentences are conditional.  The contemnor is said to carry the keys of his prison in his own pocket * * * since he will be freed if he agrees to do as ordered."  *Brown* at 253.

{¶10}  After making the contempt finding, the trial court sentenced Liming to 30 days in jail but suspended the sentence on the condition that he, among other things, timely pay his current child support obligation and make installment payments toward his arrearage.  The court's sanction was coercive and benefited Liming, so we characterize the order as a civil contempt order.

{¶11}  Nonetheless, Liming claims the purge hearing related to that order constituted a criminal proceeding.  He cites *In re Earley v. Campbell* (Mar. 30, 2000), Stark App. No. 99-CA-256, 2000 WL 329969 and *Samantha N. v. Lee A.R.* (Feb. 16, 2001), Erie App. Nos. E-00-036 & E-00-037, 2001 WL 127343, to support his argument. We find *Earley* inapplicable as it did not involve a purge hearing but instead involved a contempt finding followed by a deferred sentencing hearing.  See *Earley* at *2.

{¶12}  In *Samantha N.*, the trial court found the appellant in contempt for failing to keep his child support obligations current, but the court suspended his jail sentences on the condition that he follow a particular payment schedule.  *Samantha N.* at *1.  The

child support enforcement agency alleged that the appellant failed to follow the court's order. Id. The appellant did not have counsel at the contempt hearing or purge hearing. Id. The appellant complained that he hired an attorney to represent him at the purge hearing, but when the court "could not reach his counsel by telephone to learn why his counsel was not present for the hearing, the trial court forced him to proceed without representation." Id. at *2.

{¶13} The Sixth District concluded the trial court "was exercising its criminal contempt powers [at the purge hearing] because it was clearly no longer attempting to coerce appellant to pay his child support arrearages. Instead the trial court was punishing appellant for not complying with its previous orders." Id. at *3 (footnote omitted). The *Samantha N.* Court noted that "[o]nce the contempt power is classified as criminal, the contemnor is entitled to those rights and constitutional privileges afforded a defendant in a criminal action. * * * The most important of these are the contemnor's right to due process and to have the complainant prove the contempt beyond a reasonable doubt." Id., quoting *Winkler v. Winkler* (1991), 81 Ohio App.3d 199, 202, 610 N.E.2d 1022. And the court concluded that the trial court denied the appellant his due process rights. Id.

{¶14} The *Samantha N.* Court did not address the issue of whether indigent parties have a constitutional right to appointed counsel at purge hearings. Moreover, we disagree with the Sixth District's characterization of a purge hearing as an exercise of criminal contempt powers. The fact that Liming failed to meet the purge conditions to avoid enforcement of his sentence did not convert the purge hearing into a criminal contempt proceeding at which he faced a new risk of imprisonment. See *Segovia v.*

*Likens*, 179 Ohio App.3d 256, 2008-Ohio-5896, 901 N.E.2d 310, at ¶39. The only issue before the court at the purge hearing was whether Liming met the purge conditions imposed following the civil contempt hearing, i.e., whether he paid his current child support obligations and his arrearage. See id. Finding that Liming had not purged the contempt, the trial court did not impose a new sentence. See id. "Rather, the court enforced the sentence it had already imposed." Id. Thus, we conclude that the purge hearing retained the civil character of the original contempt proceeding. And because the purge hearing did not constitute a criminal prosecution, the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution did not apply to it.

{¶15} The characterization of the purge hearing as civil in nature does not foreclose the possibility that Liming had a procedural due process right to counsel predicated on the Fourteenth Amendment to the United States Constitution or Section 16, Article I of the Ohio Constitution. "When read in conjunction with Sections 1, 2, and 19 [of the Ohio Constitution], Section 16 is the equivalent to the Fourteenth Amendment's due process clause. As a consequence, decisions of the United States Supreme Court can be utilized to give meaning to the guarantees of Article I of the Ohio Constitution." *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (internal citation omitted).

{¶16} The United States Supreme Court has explained:

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. "[U]nlike some legal rules," this Court has said, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy* [(1961)], 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230. Rather, the phrase expresses the requirement of "fundamental

fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640.

**{¶17}** Liming claims that he had a due process right to counsel at the purge hearing because he faced the loss of his physical liberty at the hearing. He cites *Lassiter* for the proposition that "[r]egardless of whether the matter is civil or criminal, due process demands that whenever a party faces the deprivation of his or her liberty interest, the party is entitled to counsel." (Appellant's Br. 5). Contrary to Liming's assertion, *Lassiter* did not create a per se right to appointed counsel whenever loss of liberty is possible. *Lassiter* did not even establish a presumption in favor of appointed counsel when incarceration is possible. In rejecting a mother's claimed right to counsel before her parental rights could be terminated, the Court simply found a "presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty[.]" *Lassiter* at 31. *Lassiter* did not involve a potential loss of physical liberty, so the Court had no occasion to hold – and did not hold – that when loss of liberty is at stake, there is a per se right to or presumption in favor of appointing counsel.

**{¶18}** Liming also cites *Argersinger v. Hamlin* (1972), 407 U.S. 25, 38, 92 S.Ct. 2006, 32 L.Ed.2d 530 for the proposition that "'where imprisonment actually occurs[,]' the indigent-defendant must have been appointed counsel." (Appellant's Reply Br. 2). However, the *Argersinger* Court held that "absent a knowing and intelligent waiver, no

person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger* at 37. *Argersinger* involved the Sixth Amendment right to counsel in criminal proceedings, not a due process based right to counsel in a civil proceeding, thus we find it inapplicable here.

{¶19} Thus, we decline to create a per se right to counsel at purge hearings based solely on the possibility of imprisonment after such a hearing. We recognize that this conclusion appears at odds with our decision in *Matter of Estate of Straub* (Feb. 13, 1992), Ross App. No. 1728, 1992 WL 37781, at *8, where we broadly stated that "counsel must be appointed for those unable to afford counsel in any proceedings where incarceration is a possibility, including both civil and criminal contempt proceedings." However, *Straub* did not involve a purge hearing, so we did not have occasion to address the right to counsel in that context.

{¶20} Liming cites a number of Ohio cases for the proposition that a civil contemnor is entitled to counsel at a purge hearing. However, none of these cases address the specific issue of whether a civil contemnor has a constitutional right to appointed counsel at a purge hearing: *Schock v. Sheppard* (1982), 7 Ohio App.3d 45, 453 N.E.2d 1292; *Green v. Green*, Portage App. No. 2007-P-0092, 2008-Ohio-3064; *Everly v. Shuster* (Apr. 27, 1999), Noble App. No. 237, 1999 WL 260895; *Duffield v. Duffield* (Sept. 12, 2001), Wayne App. No. 01CA0002, 2001 WL 1044077.

{¶21} Therefore, to determine whether an indigent civil contemnor who had counsel at his contempt hearing has a per se right to appointed counsel at a purge hearing, we turn to the United States Supreme Court's decision in *Mathews v. Eldridge*

(1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. The *Mathews* Court identified three factors for courts to evaluate in determining what procedural due process requires: 1.) the private interests at stake; 2.) the government's interest; and 3.) the risk that the procedures used will lead to erroneous decisions. *Mathews* at 335. See *Lassiter*, supra, at 27 (in part balancing these factors to decide whether mother had due process right to counsel before parental rights could be terminated).

**{¶22}** As to the private interests at stake, civil contemnors such as Liming certainly face the loss of physical liberty at a purge hearing. However, as the Tenth District has recognized, this liberty interest is a "diminished one." *Segovia*, supra, at ¶43. In *Segovia* the trial court found Ricardo, the plaintiff in an action to establish parental rights and responsibilities concerning two minor children, in contempt for failing to comply with a court order regarding phone access to the children. Id. at ¶¶2-3, 7-8. The court sentenced Ricardo to 15 days in jail but suspended the sentence on the condition that Ricardo purge the contempt by giving the children's mother additional phone time with them during his next parenting weekend. Id. at ¶7. Subsequently, the mother filed a motion to enforce, claiming Ricardo did not comply with the purge condition. Id. at ¶11. At the purge hearing, Ricardo sought a continuance to obtain counsel, but the court denied his request. Id. at ¶12. The court enforced five days of the suspended sentence and continued to suspend the remaining ten days. Id. at ¶17. Ricardo appealed, arguing in part that the court should have determined whether he was indigent and eligible for court appointed counsel. Id. at ¶18.

**{¶23}** In evaluating the private interests at stake, the *Segovia* Court considered the fact that "a litigant's right to counsel diminishes as his personal liberty interest

diminishes." Id. at ¶42, citing *Lassiter* at 26. The Court cited parole revocation as an example, noting that "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." Id., quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484. While the Tenth District recognized that "Ricardo faced the risk of losing his freedom following the purge hearing," the Court also recognized that the "trial court had already conditioned Ricardo's freedom on his continued compliance with the court's order." Id. at ¶43. "Thus, like a parolee subject to having his parole revoked, Ricardo's liberty interest was a diminished one." Id. Likewise, we conclude that since the trial court already conditioned Liming's freedom on compliance with the purge conditions, he had a diminished liberty interest at the purge hearing.

**{¶24}** Regarding the risk that the procedures used will lead to erroneous decisions, the Tenth District considered the fact that Ricardo had a "full opportunity, with counsel, to defend against the contempt charge in the first instance" and "did not object to or otherwise appeal from that court's finding of contempt." Id. at ¶44. Therefore, the *Segovia* Court found that it could afford the finding of contempt "sufficient reliability to support a sentence." Id., citing *Alabama v. Shelton* (2002), 535 U.S. 654, 665, 667, 122 S.Ct. 1764, 152 L.Ed.2d 888. And the Court concluded that "the only question at issue in the purge hearing-whether Ricardo purged the contempt-was a limited one and presented a low risk of an erroneous decision by the trial court." Id.

**{¶25}** Like the contemnor in *Segovia*, Liming had counsel to defend the contempt charge in the first instance and did not appeal from the contempt finding. And

we agree with the *Segovia* Court that the only question at issue during a purge hearing, i.e. whether the contemnor purged the contempt, is a limited one and presents a low risk of an erroneous decision by the trial court. Moreover, in examining the government's interest, we recognize that requiring the state to provide indigent civil contemnors with appointed counsel at purge hearings would place additional fiscal and administrative burdens on the government. See *Mathews*, supra, at 335.

{¶26} Balancing the civil contemnor's diminished liberty interest at a purge hearing against the low risk of an erroneous decision at the hearing and the government's interest, we decline to create a categorical rule that civil contemnors represented by counsel at contempt hearings have a due process based right to appointed counsel at purge hearings. We overrule Liming's first and second assignments of error and affirm the trial court's judgment. This decision does not foreclose the possibility that fundamental fairness – "the touchstone of due process" – might require the appointment of counsel at a purge hearing under certain circumstances. See *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 787-790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (declining to adopt categorical rule that government must provide counsel for indigents in all probation or parole revocation cases and instead adopting a case-by-case approach). However, Liming does not advocate a case-by-case approach to this issue, let alone argue that he was entitled to counsel at the purge hearing based on circumstances unique to his case. So we need not address those issues here.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
    William H. Harsha, Presiding Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**