O’Donnell, J.,
dissenting.
{¶ 35} In this appeal, we are confronted with the issue whether an indigent contemnor facing incarceration for failure to comply with the purge conditions of a contempt order based on nonpayment of child support has a right to counsel. I respectfully dissent from the view of the majority because I believe that a trial court must hold a hearing to determine the contemnor’s ability to pay and appoint counsel for an indigent before imposing incarceration.
Factual and Procedural Background
{¶ 36} On September 11, 2008, the Athens County Child Enforcement Agency filed a motion for contempt pursuant to R.C. 2705.031 against Liming, alleging that he failed to comply with an order of the court dated January 11, 2008, regarding payment of child support.
{¶ 37} On October 15, 2008, a juvenile court magistrate held a hearing. Liming at that time was represented by counsel, and a staff attorney represented the child-support-enforcement agency. The magistrate issued a decision recommending that the court find Liming in contempt and sentence him to 30 days in jail, which could be purged if Liming complied with certain payment and other conditions set forth in the recommendation. Subsequent to that hearing, counsel for Liming withdrew.
{¶ 38} None of the parties objected to the magistrate’s recommendation, and the court adopted it on November 12, 2008.
{¶ 39} On September 15, 2009, the agency moved to impose the jail sentence because Liming had failed to comply with the conditions set forth in the November 2008 order. On June 14, 2010, the court held a hearing on that motion, and Liming requested court-appointed counsel. The court denied his request, and on July 28, 2010, imposed ten days of the original 30-day jail sentence but suspended the remaining 20 days on condition that Liming comply with an order entered June 3, 2010, which decreased his monthly child-support payments. The court issued that entry in response to an administrative review *520 by the agency, but the downward modification set forth in the entry had no bearing on the finding of contempt or the alleged inability of Liming to purge that contempt.
{¶ 40} On August 11, 2010, an attorney employed by the Ohio Public Defender filed a notice of appeal in the Fourth District Court of Appeals on behalf of Liming, as well as an affidavit of indigency and a motion for appointment of appellate counsel. In an entry dated September 21, 2010, the juvenile court granted that motion, appointing counsel and ordering that the transcript of the June 14, 2010 hearing be prepared at state expense.
{¶ 41} On appeal, Liming relied on the Sixth and Fourteenth Amendments to the United States Constitution and on the Ohio Constitution, Article I, Sections 10 and 16, asserting that he had a right to appointed counsel at the purge hearing. The court of appeals rejected the Sixth Amendment argument because the purge hearing “retained the civil character of the original contempt proceeding” and “did not constitute a criminal prosecution.” Liming v. Damos, 4th Dist. No. 10CA39, 2011-Ohio-2726, 2011 WL 2225067, at ¶ 14. With respect to his argument involving the Fourteenth Amendment, the court of appeals applied a due process analysis established in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and concluded that Liming did not have a procedural due process right to counsel.
Due Process
{¶ 42} “Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.” Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). A governmental action that infringes upon this freedom “constitutes a significant deprivation of liberty that requires due process protection.” Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).
{¶ 43} To determine whether a governmental action satisfies the dictates of procedural due process, the Supreme Court established an analysis in Mathews v. Eldridge that requires the balancing of three competing factors: (1) the private interest affected by the governmental action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the governmental interest at stake, including the fiscal or administrative burdens of providing additional or substitute procedural requirements. 424 U.S. at 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18.
{¶ 44} The Supreme Court recently applied that analysis to determine “whether the Fourteenth Amendment’s Due Process Clause requires the State to provide counsel (at a civil-contempt hearing) to an indigent person potentially *521 faced with such incarceration.” (Emphasis sic.) Turner v. Rogers, — U.S. -, 131 S.Ct. 2507, 2512, 180 L.Ed.2d 452 (2011). In that case, a South Carolina court found Michael Turner, an indigent parent who had not been appointed counsel, in contempt of a previous child-support order and sentenced him to 12 months of incarceration. The Supreme Court held that “the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration” (emphasis sic), id. at 2520, but attached the caveat that “the State must nonetheless have in place alternative procedures that assure a fundamentally fair determination of the critical incarceration-related question, whether the supporting parent is able to comply with the support order.” Id. at 2512.
{¶ 45} The court regarded the following examples as sufficient safeguards for purposes of due process:
(1) notice to the defendant that his “ability to pay” is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (e.g., those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.
Id. at 2519.
{¶ 46} In the instant case, the agency filed a motion for contempt pursuant to R.C. 2705.031. As required by that statute, the summons contained safeguards listed in Turner, including “[njotice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons.” R.C. 2705.031(C)(2). A proceeding pursuant to this statute is civil and allows a contemnor to purge by payment of the arrearage. Due to its civil nature, the proceedings provide a contemnor with “fewer procedural protections than in a criminal case.” Turner at 2516.
{¶ 47} The right to counsel in a contempt proceeding does not turn on the civil label attached, but rather on whether the procedure satisfies the specific dictates of due process prescribed by Mathews. Id. The starting point of this analysis required the court to determine whether Liming qualified as indigent, which it did not do. Assuming indigency, balancing the three competing factors set forth in Mathews compels me to conclude that the court violated Liming’s right to procedural due process when it denied his request for appointed counsel.
*522 {¶ 48} First, the private interest affected by the governmental action weighs heavily in favor of the right to counsel. Here, the interest at stake in Liming’s purge hearing consisted of his personal freedom, and the threatened loss of that liberty through imprisonment demanded due process protection. Id., ■ — ■ U.S. -, 131 S.Ct. at 2518, 180 L.Ed.2d 452. Although Liming had a diminished liberty interest, if truly indigent, he did not “hold the keys to the jailhouse door.” As explained by the Tenth Circuit Court of Appeals in Walker v. McLain:
It is true that the defendant’s right to appointed counsel diminishes as his interest in personal liberty diminishes. However, petitioner’s liberty interest cannot truly be viewed as conditional. If petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; he does not have the keys to the prison door if he cannot afford the price. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated. The argument that the petitioner has the keys to the jailhouse door does not apply to dimmish petitioner’s liberty interest.
(Emphasis added and citation omitted.) Id., 768 F.2d 1181, 1184 (10th Cir.1985).
{¶ 49} In the case of an indigent parent, the opportunity to purge a finding of contempt made pursuant to R.C. 2705.031 is illusory. For purposes of determining a right to counsel, there is no real difference between an initial contempt hearing and a subsequent purge hearing, because both proceedings are part of a single contempt action. Further, the inability of an indigent parent to comply with the purge conditions of the contempt order renders imprisonment a substantial certainty, thereby virtually guaranteeing the loss of personal liberty. Thus, given the requirement in R.C. 2705.031 that an indigent contemnor be provided with notice of the right to counsel when a contempt action is filed, the express acknowledgement by the majority that “[a] purge hearing is not a new contempt proceeding but a conclusion of the originating contempt hearing” highlights the fallacy of even making this distinction.
{¶ 50} Regarding the second factor, contrary to the view of the majority, the purge hearing carried with it a high risk of an erroneous determination. The Supreme Court noted in Turner that “[g]iven the importance of the interest at stake, it is obviously important to assure accurate decision-making in respect to the key ‘ability to pay’ question.” Turner, — U.S.-, 131 S.Ct. at 2518, 180 L.Ed.2d 452. The need for accuracy is further underscored by the fact that “ability to comply marks a dividing line between civil and criminal contempt.” *523 Id., citing Hicks v. Feiock, 485 U.S. 624, 635, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), fn. 7. Indeed, as one court explained:
When an indigent litigant is forced to proceed at an ability-to-pay hearing without counsel, there is a high risk of an erroneous determination and wrongful incarceration. However seemingly simple support enforcement proceedings may be for a judge or lawyer, gathering documentary evidence, presenting testimony, marshalling legal arguments, and articulating a defense are probably awesome and perhaps insuperable undertakings to the uninitiated layperson. The task is that much more difficult when the indigent must defend himself after he has already been deprived of his freedom. See, e.g., Walker [v. McLain,] 768 F.2d [1181] 1184 [(10th Cir.1985)] (“The issues in a proceeding for wilful nonsupport are not so straightforward that counsel will not be of assistance in insuring the accuracy and fairness of the proceeding. This is particularly true where the petitioner is indigent and is attempting to prove his indigency as a defense to wilfulness”).
Pasqua v. Council, 186 N.J. 127,145, 892 A.2d 663 (2006).
{¶ 51} In this case, Liming claimed indigency at the purge hearing and bore the burden of proving the defense of inability to pay. The court denied his request for the appointment of counsel, the purpose of which is to aid in providing that defense, and did so without first determining if Liming qualified as indigent. The failure of the court to make “an express finding” regarding ability to pay constituted a deficiency of a critical safeguard noted in Turner. Id. at 2519; see also id. at 2518-2519 (“the critical question likely at issue in these cases concerns, as we have said, the defendant’s ability to pay. That question is often closely related to the question of the defendant’s indigence”). In addition, within weeks of denying the request by Liming at the purge hearing to appoint him counsel, when the risk of the deprivation of his liberty interest came to fruition, the juvenile court granted his motion for the appointment of appellate counsel based on his affidavit of indigency. The irreconcilable nature of these actions emphasizes the risk factor associated with an erroneous deprivation of interests.
{¶ 52} Lastly, I concur in the assessment of the majority that the government has an interest in ensuring that parents financially support their children, and although providing counsel to indigent parents increases the fiscal and administrative burdens of the state, the interest of the government is not somehow undercut by providing counsel to parents who have no fiscal ability to comply with the conditions to purge a previous contempt order.
*524 Timothy Young, Ohio Public Defender, and E. Kelly Mihocik, Assistant Public Defender, for appellant.
Keith M. Wiens, for appellee.
{¶ 53} Based on the foregoing, the failure of the juvenile court to determine whether Liming qualified as indigent marks the absence of a critical safeguard. Assuming Liming qualified as indigent, which the court so determined when it appointed him appellate counsel within only weeks of having denied him appointed counsel at the purge hearing, balancing the three competing factors set forth in Mathews compels me to conclude that he was denied procedural due process. Thus, the procedure in this case did not meet the strict mandates of due process.
Conclusion
{¶ 54} Ability to pay is the essence of an action for contempt for failure to pay. A contempt action includes hearings to determine contempt as well as the purge of that contempt. The right of a parent facing incarceration due to noncompliance with the purge conditions of a contempt order is not dependent on the nature of a specific hearing or whether the action is civil or criminal. Rather, the right of an indigent parent to counsel emanates from the possibility of incarceration for failure to comply with an order to pay when the alleged indigent contemnor has no ability to pay. Although Turner does not require the appointment of counsel in all such instances, assuming that Liming qualified as indigent at the purge hearing, balancing the three competing factors in Mathews favors the appointment of counsel, and the failure of the court to. make an express finding as to his ability to pay, and to appoint counsel upon a finding of indigency, violated his right to procedural due process.
{¶ 55} For these reasons, I would reverse the judgment of the Fourth District Court of Appeals and remand the matter to the juvenile court for determination as to whether Liming qualified as indigent and for the appointment of counsel upon a finding of indigency.
Pfeifer, J., concurs in the foregoing opinion.