[Cite as *Robinson v. Rummelhoff*, 2014-Ohio-1461.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Denise Robinson, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-410 |
| v. | : | (C.P.C. No. 10JU-03-4106) |
| Devin Rummelhoff, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

---

## D E C I S I O N

### Rendered on February 20, 2014

---

*Sanjay K. Bhatt*, for appellant.

*Ralph A. Kerns & Associates*, *Ralph A. Kerns* and *Amanda L. Wilhelm*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch.

T. BRYANT, J.

{¶ 1} Plaintiff-appellant, Denise Robinson ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which found her in contempt and ordered her to pay attorney fees incurred by her former husband, defendant-appellee, Devin Rummelhoff ("appellee"). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The parties, parents of one minor child, born September 8, 1996, divorced in Las Vegas, Nevada, on July 29, 1998. After appellant and the child relocated to Columbus, Ohio, the case was properly registered to Franklin County. At all relevant

times, appellee resided in Mascat, Oman, on a special military assignment and worked for the U.S. Embassy. As a result, appellee and appellant communicated primarily through email and text message.

{¶ 3} On September 30, 2009, appellee emailed appellant, stating that he wished to exercise his summer 2010 parenting time with the child by taking a European vacation with him and then spending some time with him in Oman. Appellant responded by email, averring that she did not want the child to travel to Oman or anywhere else outside the United States. Accordingly, she did not obtain a passport for the child at that time.

{¶ 4} Because the parties could not resolve the issue of appellee's 2010 summer parenting time, appellee, on April 27, 2010, filed a motion for reallocation of parental rights and responsibilities. In mid-May 2010, appellee provided appellant with the written authorization required to obtain the child's passport. Pursuant to an agreed order filed May 17, 2010, the parties submitted arguments on appellee's motion via affidavits.

{¶ 5} In his affidavit, appellee proposed that the child be permitted to accompany appellee, along with appellee's wife and stepson, on a European vacation. The affidavit included a proposed itinerary for the trip. Pursuant thereto, the child was to depart Columbus on June 6, 2010 and arrive in Rome, Italy, on June 7, 2010 for two days of sightseeing. Thereafter, the group was to take a Mediterranean cruise from June 9 to June 16, 2010, followed by sightseeing in other regions of Italy from June 16 to June 22, 2010. The proposed itinerary did not include travel to Oman. Appellee averred that appellant would need to obtain a passport for the child; he further averred that he had already provided appellant with the written authorization required to obtain the passport. In her affidavit, appellant expressed serious misgivings about the child traveling internationally, especially to Oman.

{¶ 6} On May 28, 2010, a magistrate issued a decision which included the following pertinent orders:

> 1. [Appellee] shall exercise a summer vacation with the minor child * * *, between the dates of June 6, 2010, and June 22, 2010.
>
> 2. [Appellee] shall bear the cost of the summer travel, which shall include transportation chaperones for all plane and/or train travel. [Appellee] shall make all flight arrangements for the minor child for the above dates. The minor child shall

depart on his flight on June 6, 2010 and he shall be returned to [Appellant] by June 22, 2010.

3.    [Appellant] shall immediately complete all necessary paperwork to obtain an expedited leisure passport for the minor child at [Appellant's] expense.  Said passport shall be obtained by June 4, 2010.

4.  The minor child shall not travel in countries which are not members of the Hague Convention Treaty.  The minor child shall not travel to Jordan.

{¶ 7}    On June 3, 2010, the magistrate issued an amended order pursuant to Civ.R. 60(A), substituting "Mascat, Oman" for "Jordan" in paragraph 4.  The magistrate made no substantive changes to the May 28, 2010 order.

{¶ 8}    In accordance with the magistrate's decision, appellee finalized the travel arrangements and paid for the tickets.

{¶ 9}    Appellant received the magistrate's order on May 28, 2010, and she immediately submitted an application for an expedited passport via overnight delivery. However, rather than including appellee's May 2010 authorization in the application, she inadvertently included an authorization she had previously received from appellee. On June 8, 2010, she was notified that the passport application had been denied because appellee's authorization was outdated and thus no longer valid.  After informing appellee of the problem, she immediately supplemented the previously filed application with appellee's May 2010 authorization.

{¶ 10} On the same day, June 8, 2010, appellant was notified that the application had been approved and she would likely receive the passport by 10:00 a.m. on June 9, 2010.  Appellant immediately informed appellee of this development via text message.  At 4:14 p.m. on June 8, 2010, appellee sent appellant a text message stating that he wanted the child to depart on a flight the next day.  Shortly thereafter, at 5:32 p.m., appellee sent appellant a text message indicating he had made arrangements for the child to travel to Rome, Italy via a flight leaving Columbus at 2:30 p.m. on June 9, 2010.  Appellant responded by text message three minutes later, at 5:35 p.m., stating that she did not believe she could accommodate the proposed travel plans because she did not think she

could get the day off from work on such short notice. She indicated she would talk to her boss about the situation and attempt to get someone to cover for her.

{¶ 11} At the time, appellant managed a Federal Express center and supervised an assistant manager and three other team members. She worked Monday through Friday and typically worked alone from 7:00 a.m. until 1:00 p.m., when other team members reported to work.

{¶ 12} Appellee suggested that appellant have her mother or her husband or one of appellee's friends transport the child to the airport. Because she believed that only a parent could accompany a minor child to the airport for an international flight, appellant declined appellee's suggestions. Thereafter, late in the evening on June 8, 2010, appellant sent appellee a text message indicating that she would be unable to get the child to the airport on June 9, 2010 and that the child would have to depart the next week.

{¶ 13} The child's passport was delivered to appellant's home at 9:50 a.m. on June 9, 2010. Appellant did not retrieve it until she returned home from work that day at 4:30 p.m. Consequently, she did not transport the child to the airport in time for the 2:30 flight on June 9, 2010. Later on June 9, 2010, appellant sent appellee a text message stating she had received the passport. Appellee apparently did not receive this text message. On June 11, 2010, appellant sent several text messages to appellee indicating that the child would be able to travel on June 15, 2010. Appellant requested that appellee provide her with flight times for that date so that she could schedule time off work to transport the child to the airport.

{¶ 14} On June 12, 2010, appellee sent appellant a text message inquiring whether appellant had obtained the passport. Appellant reported that she had received the passport and urged appellee to make flight arrangements for June 15, 2010. Appellee immediately made arrangements for the child to leave Columbus on June 15, 2010.

{¶ 15} On June 15, 2010, appellant transported the child to the Columbus airport; the child boarded a flight to Italy after appellant signed documentation releasing him to the custody of the airline. The child arrived in Italy on June 16, 2010. Because the child wished to return home early in order to participate in a sporting event, he flew back to Columbus on June 20, 2010. Appellant retrieved the child from the airport after signing documentation acknowledging his return to her custody.

{¶ 16} On September 15, 2010, appellee filed a motion for contempt, arguing that appellant had willfully violated the magistrate's May 28, 2010 order by failing to obtain a passport for the child by June 4, 2010. Appellee asserted that appellant's failure to comply with the magistrate's order resulted in changes to the child's travel dates. Appellee asserted that "[t]he last-minute nature of the flight planning required that [the child] spend more time physically en route, and thus spent only about 100 hours on the scheduled vacation parenting time." (Sept. 15, 2010 Motion, 3.) Appellee sought reimbursement for various expenses incurred in rearranging the child's travel plans. Appellee also sought reimbursement of $1,500 for attorney fees and costs incurred in prosecution of the contempt motion.

{¶ 17} In an affidavit attached to his motion, appellee noted that the magistrate's order entitled him to parenting time with the child between June 6 and June 22, 2010. Appellee averred that appellant's failure to timely obtain a passport for the child resulted in the child missing the scheduled cruise "and being able to experience only limited parenting time with me." (Affidavit, ¶ 5.) Appellee further averred, in pertinent part, that "[d]ue to [appellant's] delay in obtaining the Passport, my current wife and stepson and I changed our vacation plans to allow [the child] to join us for the small portion of the Parenting Time possible. He joined us in Italy for approximately 100 hours. He departed Columbus on June 15 and returned June 20. * * * [T]he trip reflected a fraction of our scheduled time together." (Affidavit, ¶ 8.)

{¶ 18} On July 27, 2011, appellant filed a motion to show cause why appellee should not be held in contempt for failing to comply with terms of the parties' divorce decree requiring appellee to provide appellant with copies of quarterly earnings statements and yearly federal income tax returns. Appellant requested that the court find appellee in contempt and order him to pay attorney fees and expenses incurred in the prosecution of the show cause motion. In her attached affidavit, appellant attested to the facts raised in her motion.

{¶ 19} On December 14, 2011, appellee filed an amended motion for contempt. In large part, the amended motion reiterated that which was contained in the original motion. Appellee again asserted that appellant willfully violated the magistrate's order by failing to obtain a passport for the child by June 4, 2010. However, appellee further

asserted that "[n]ot only did [appellant] fail in obtaining the passport in the time frame Ordered by the Magistrate, but Plaintiff further violated the Order by not immediately transporting the child to the Airport after the passport was obtained. Instead, [Appellant] stated that she could not get off work and that the child would have to fly out the next week." (Dec. 14, 2011 Amended Motion, 3.) Appellee again asserted that changes to the child's travel dates necessitated by appellant's failure to timely obtain the child's passport resulted in diminished summer parenting time. Appellee again sought reimbursement for various expenses incurred in rearranging the child's travel plans. Appellee also sought reimbursement of $7,500 for attorney fees and costs incurred in prosecution of the contempt motion.

{¶ 20} In the affidavit attached to his amended motion, appellee restated much of what he averred in the affidavit attached to his original motion. However, in conjunction with the amended motion, appellee further averred that "[appellant] further violated the Orders of this Court by not facilitating the transfer of our [child] to the airport after said passport was obtained causing additional loss of my Ordered parenting time." (Affidavit, ¶ 7.)

{¶ 21} A hearing on the parties' motions was held before a magistrate on March 22, 2012.[1] Appellant and appellee testified at the hearing, and several exhibits were admitted into evidence. In a decision filed July 20, 2012, the magistrate resolved that appellee's motion for contempt alleged that appellant violated the magistrate's May 28, 2010 order by "failing to obtain a passport for the parties' minor child in a timely manner, and by failing to send the child on vacation parenting time with Father as specified in the Order." (July 20, 2012 Magistrate Decision, 4.)

{¶ 22} As to the first issue, the magistrate found appellant in contempt of that portion of the magistrate's May 28, 2010 order requiring her to obtain the child's passport by June 4, 2010. However, the magistrate also found that appellant had presented a valid defense to this contempt. Specifically, the magistrate found that "[appellant] took reasonable and appropriate steps after receiving the Magistrate's Order to comply with that order with regard to obtaining the child's passport. It was beyond [appellant's]

---

[1] The magistrate who conducted the March 22, 2012 hearing was not the same magistrate who issued the May 28, 2010 order.

control to obtain the passport by June 4, 2010 as required by the court order." (Magistrate's Decision at 6.)

{¶ 23} Regarding the second issue, the magistrate found appellant in contempt of that portion of the magistrate's order awarding appellee vacation parenting time between June 6 and June 22, 2010. The magistrate noted the undisputed evidence that the child did not leave Columbus to begin his vacation with appellee until June 15, 2010. The magistrate found, however, that the fact that the passport did not arrive in time for the child to board the flight at the commencement of the parenting time on June 6, 2010 was beyond appellant's reasonable control and thus provided her with a valid defense to the contempt for the time prior to the arrival of the passport at 9:50 a.m. on June 9, 2010.

{¶ 24} However, the magistrate found no merit to appellant's impossibility of performance defense for the time period between June 9 and June 15, 2010. Specifically, the magistrate found that appellant did not provide sufficient credible evidence supporting her claim that airline regulations mandated that only a parent could release a minor child to airline custody for an international flight. The magistrate further found that even if appellant's claim regarding airline regulations were true, appellant did not provide sufficient credible evidence demonstrating it was impossible for her to take the child to the airport on June 9, 2010. The magistrate noted that the passport arrived at 9:50 a.m. and the flight was not scheduled until 2:30 p.m. The magistrate concluded that after the passport arrived, appellant chose to work and did not make alternative arrangements to get the child to the airport. The magistrate found that it was not impossible for her to do so; rather, it was her conscious decision.

{¶ 25} The magistrate denied appellee's request for reimbursement of expenses incurred in rearranging travel plans. However, the magistrate determined that appellee was entitled to an award of $5,000 to compensate him for reasonable attorney fees incurred in the filing and prosecution of his contempt motion.

{¶ 26} Finally, the magistrate found that appellant did not present sufficient evidence establishing appellee's contempt. Accordingly, the magistrate denied appellant's show cause motion.

{¶ 27} The trial court adopted the magistrate's decision by judgment entry filed July 20, 2012. Thereafter, appellant filed objections to the magistrate's decision.

Appellant objected to the contempt finding against her, the assessment of attorney fees associated with that contempt, and the denial of her show cause motion.

{¶ 28} On April 17, 2013, the trial court filed a decision and entry that overruled appellant's objections and adopted the magistrate's decision. The trial court agreed with the magistrate's findings that appellant was in contempt for failing to obtain the child's passport by June 4, 2010, but had presented a valid defense that the delay in obtaining the passport was beyond her control. The trial court also agreed with the magistrate's findings that appellant was in contempt by failing to provide appellee his parenting time from June 6 through June 15, 2010, and that appellant's defense of impossibility was valid for the period from June 6 through June 8, 2010, but not valid for the period from June 9 through June 15, 2010. The trial court also agreed with the magistrate's award of attorney fees to appellee for appellant's contempt. Finally, the court agreed with the magistrate's denial of appellant's show cause motion.

{¶ 29} Having found appellant in contempt, the trial court sentenced appellant to three days in jail, suspended on the condition that she purge her contempt by: (1) providing appellee with six days of make-up parenting time during the summer of 2013, (2) paying appellee $5,000 in attorney fees within 90 days of the filing of the court's decision, and (3) paying any outstanding court costs.

## II. ASSIGNMENTS OF ERROR

{¶ 30} On appeal,[2] appellant advances the following three assignments of error:

> [I]. The Trial Court abused its discretion in entering a finding of contempt against Appellant as such a finding was not supported by the evidence.

> [II]. The Trial Court erred in awarding attorney fees to Appellee as the fees incurred were for a portion of the Motion for Contempt for which the Court ruled there was no contempt.

---

[2] Appellee urges that we dismiss appellant's appeal for failure to timely file her corrected brief and for failure to properly serve appellee with the corrected brief. We decline appellee's request for the following reasons. By journal entry filed July 25, 2013, this court granted appellant's July 24, 2013 motion for leave to file her corrected brief, instanter. Further, the certificate of service attached to appellant's July 24, 2013 corrected brief indicates that said brief was mailed to appellee's counsel on July 24, 2013. In addition, appellant has provided an affidavit from a paralegal in appellant's counsel's office attesting that she mailed appellant's corrected brief on July 24, 2013.

[III].  The Trial Court erred in awarding attorney fees without first conducting a hearing or accepting testimony on whether the fees were appropriate.

## III.  FIRST ASSIGNMENT OF ERROR – CONTEMPT

{¶ 31}  In her first assignment of error, appellant contends the trial court abused its discretion in finding her in contempt of the magistrate's May 28, 2010 order. Specifically, appellant takes issue with the trial court's finding of contempt with regard to her failure to transport the child to the airport in time for the 2:30 p.m. flight on June 9, 2010, after having received the child's passport at 9:50 a.m. that morning.  Appellant maintains that she presented competent, credible evidence establishing that it was impossible for her to do so, having not been made aware of the flight time until 4:14 p.m. on June 8, 2010.  Appellant particularly relies on her own testimony that she: (1) could not take time off work on less than 24 hours notice, (2) could not have delivered the child to the airport in time for a 2:30 p.m. international flight after leaving work at 1:00 p.m., and (3) believed that only she could deliver the child to the airport for an international flight.

{¶ 32}  " 'Contempt results when a party before a court disregards or disobeys an order or command of judicial authority.' "  *Wehrle v. Wehrle,* 10th Dist. No. 12AP-386, 2013-Ohio-81, ¶ 54, quoting *Byron v. Byron,* 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11.  "Absent an abuse of discretion, a reviewing court will not overturn a finding of contempt."  *Wehrle* at ¶ 54, citing *Rife v. Rife,* 10th Dist. No. 11AP-427, 2012-Ohio-949, ¶ 9.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 33}  R.C. 2705.031(B)(2) authorizes any person who has rights under a parenting time or visitation order in a domestic relations action to "initiate a contempt action for a failure to comply with, or an interference with, the order or decree."  *Segovia v. Likens,* 179 Ohio App.3d 256, 2008-Ohio-5896, ¶ 20 (10th Dist.)  "Generally, contempt proceedings in domestic relations matters are civil in nature as their purpose is to encourage compliance with the court's orders."  *Wehrle* at ¶ 55, citing *Byron* at ¶ 12.

{¶ 34}  " '[I]n a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party has violated an order

of the court.' " *Rife* at ¶ 10, quoting *Hopson v. Hopson*, 10th Dist. No. 04AP-1349, 2005-Ohio-6468, ¶ 9. " ' "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. " ' " *In re P.P.,* 10th Dist. No. 13AP-140, 2013-Ohio-4988, ¶ 19, quoting *Arthur Young & Co. v. Kelly,* 68 Ohio App.3d 287, 295 (10th Dist.1990), quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 35} "Once the movant has met [his or] her burden, the burden shifts to the other party to either rebut the showing of contempt or demonstrate an affirmative defense by a preponderance of the evidence." *Wehrle* at ¶ 56, citing *Hopson* at ¶ 19. "[T]he absence of willfulness does not relieve the noncomplying [party] from civil contempt." *Smith v. Smith,* 10th Dist. No. 93AP-958 (Jan. 13, 1994), citing *Pugh v. Pugh,* 15 Ohio St.3d 136 (1984). " '[G]enerally, impossibility of performance is a valid defense against a contempt charge.' " *In re P.P.* at ¶ 21, quoting *McDade v. McDade,* 10th Dist. No. 89AP-991 (Sept. 27, 1990). The party seeking to raise impossibility of compliance must prove the defense by a preponderance of the evidence. *Rife* at ¶ 10. "A party must take all reasonable steps within her power to comply with the court's order and, when raising the defense of impossibility, must show 'categorically and in detail' why she is unable to comply with the court's order." *Briggs v. Moelich,* 8th Dist. No. 97001, 2012-Ohio-1049, ¶ 15, citing *Lahoud v. Tri-Monex, Inc.,* 8th Dist. No. 96118, 2011-Ohio-4120, ¶ 54.

{¶ 36} A review of the record reveals, and appellant does not dispute, that appellee established a prima facie case of contempt. Rather, appellant argues that the trial court abused its discretion in concluding that she failed to prove the defense of impossibility by a preponderance of the evidence. We disagree.

{¶ 37} Appellant testified that it was impossible for her to deliver the child to the airport in time for the 2:30 p.m. flight on June 9, 2010 because she: (1) could not take time off work on less than 24 hours notice, (2) could not have delivered the child to the airport in time for a 2:30 p.m. international flight after leaving work at 1:00 p.m., and (3) believed that she was required to accompany the child to the airport for an international flight. However, the trial court was " 'free to determine [her] credibility on

the issue and assign weight to [her] testimony accordingly.' " *Ruben v. Ruben,* 10th Dist. No. 12AP-717, 2013-Ohio-3924, ¶ 20, quoting *Frey v. Frey,* 197 Ohio App.3d 273, 2011-Ohio-6012, ¶ 26 (3d Dist.).  Contrary to appellant's assertions, both the magistrate and the trial court considered appellant's testimony regarding all three of her defenses. Appellant's testimony did not persuade either the magistrate or the trial court that her failure to deliver the child to the airport in time for the 2:30 p.m. flight on June 9, 2010 was due to circumstances beyond her control.

{¶ 38} We note that appellant did not provide any evidence beyond her self-serving testimony to substantiate her claims. Appellant offered no documentary or testimonial evidence establishing that her employer required her to provide 24-hour notice before taking time off work or that she made any effort to find someone (either one of her employees or a manager of another Federal Express office) to cover her work responsibilities so she could take the day off.  Further, even if appellant could not take the entire day off, no evidence established that she made any attempt to transport the child to the airport after 1:00 p.m. when other team members arguably reported to work.  Finally, appellant provided no documentary or testimonial evidence establishing that airline regulations require a parent to be present when a minor child boards an international flight.  Although appellant testified that she signed documentation releasing the child to the custody of the airline on June 15, 2010, and acknowledging his return to her custody on June 20, 2010, she provided no testimonial or documentary evidence corroborating this testimony.  Moreover, appellant's reliance on appellee's testimony that he personally delivers the child to airline personnel when the child travels internationally as confirmation of her understanding of airline regulations is unavailing; appellee did not testify that airline regulations required him to do so.  Because appellant failed to demonstrate "categorically and in detail" why she was unable to transport the child to the airport in time for the 2:30 p.m. flight on June 9, 2010, the trial court did not abuse its discretion in finding appellant in contempt for failure to accommodate appellee's court-ordered parenting time from June 9 to June 15, 2010.

{¶ 39} The first assignment of error is overruled.

## IV. SECOND AND THIRD ASSIGNMENTS OF ERROR – ATTORNEY FEES

{¶ 40} Appellant's second and third assignments of error are interrelated and thus will be considered jointly. In these assignments of error, appellant challenges the trial court's award of $5,000 in attorney fees to appellee.

{¶ 41} At the hearing before the magistrate, the parties stipulated to the admission of several exhibits, including appellee's exhibit K, which established that appellee had incurred attorney fees and costs of $9,713.65 from August 5, 2010 through March 21, 2012. The only testimony offered at the hearing regarding these fees was that of appellee, who averred on cross-examination that he had already paid $8,012.20 of the $9,713.65 total and that the fees included time billed by his attorney for responding to appellant's show cause motion.

{¶ 42} The trial court found "[a]fter reviewing [appellee's] detailed attorney fee history and the numerous case filings relating to his motion for contempt, * * * that the work and expense his attorney spent on this case are apparent and that he is entitled to an award of reasonable attorney's fees." (Apr. 17, 2013 Decision and Entry, 10.) The court cited "as additional guidance on the reasonableness of legal fees," DR2-106(B) of the Ohio Code of Professional Responsibility, which listed several factors for courts to consider in determining the reasonableness of attorney fees.[3] The court stated that the fees charged by appellee's counsel were customary for this locality and for the expertise required. The court noted that "as the contempt issue dragged on, [appellee's] counsel did not charge him for some of the time he worked on this case, and that lower cost-per-hour associates were also used." (Decision and Entry, 10-11.) The court further stated that "[a]t the time of the hearing in front of the Magistrate, [appellee] had been pursuing his contempt motion for over 18 months. His claim was legitimate, as [appellant] is found to be in contempt." (Decision and Entry, 11.)

{¶ 43} R.C. 3109.051(K) provides, in pertinent part:

> If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting

---

[3] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct on February 1, 2007. However, the factors to consider in determining the reasonableness of attorney fees under DR2-106(B) of the Code of Professional Responsibility are identical to those subsequently set forth in Rule 1.5 of the Code of Professional Conduct. Accordingly, the trial court's erroneous citation to DR2-106(B) of the Code of Professional Responsibility is harmless.

parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall * * * require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt.

{¶ 44} Accordingly, "under R.C. 3109.051(K) reasonable attorney fees are automatically assessed to the prevailing party in a contempt action arising from the failure to comply with a visitation order." *Karales v. Karales,* 10th Dist. No. 00AP-1428 (Aug. 21, 2001).

{¶ 45} Appellant first alleges that the trial court erred in awarding attorney fees without first conducting a separate hearing or providing appellant's counsel the opportunity for cross-examination on the fee issue. Appellant has provided no authority for the proposition that R.C. 3901.051(K) requires a separate hearing on the amount of attorney fees. Further, even assuming a separate hearing were required, the matter is waived for purposes of appeal. The record contains no evidence that appellant preserved the issue by registering any objection to the lack of a separate hearing on the amount of fees. Moreover, counsel for appellant was afforded the opportunity for cross-examination on the fee issue. As noted above, the only testimony regarding the attorney fees was offered by appellee on cross-examination.

{¶ 46} Appellant next argues that the trial court abused its discretion because some of the fees incurred by appellee were for legal representation related to a portion of appellee's motion for which the trial court concluded there was no contempt. Appellant specifically takes issue with the trial court's finding that appellee had been pursuing his contempt motion for over 18 months. Appellant argues that the September 2010 contempt motion related solely to the issue of the passport, and that the issue of parenting time was not raised until appellee filed his amended contempt motion in December 2011. Appellant contends that because there was no contempt finding on the passport issue, she should not be responsible for attorney fees incurred by appellee from September 2010 to December 2011. Appellant also contends that some of the fees incurred by appellee were for legal representation related to appellant's unsuccessful contempt motion.

{¶ 47} We do not agree with appellant's basic premise as to the first issue. As previously mentioned, in both his September 2010 motion for contempt and the affidavit attached to that motion, appellee argued that appellant's failure to timely obtain the child's passport resulted in his receiving substantially less parenting time than ordered by the magistrate. A review of the record reveals that issues regarding the passport and the parenting time were inextricably linked throughout the proceedings. Indeed, in his July 20, 2012 decision, the magistrate determined that appellee's contempt motion raised issues pertaining both to appellant's failure to timely obtain the passport as well as appellant's failure to accommodate the parenting time order. As to the second issue, the trial court expressly noted that it had considered the fact that the fee history included costs associated with defending against appellant's contempt motion.

{¶ 48} Appellant also contends that there was no evidence offered as to the reasonableness of the fees. "The party seeking an award of attorney fees bears the burden of proof to establish their reasonableness." *Groza-Vance v. Vance,* 162 Ohio App.3d 510, 2005-Ohio-3815, ¶ 44 (10th Dist.), citing *Conley v. Conley,* 10th Dist. No. 89AP-826 (Apr. 26, 1990).

{¶ 49} As we have previously noted, defendant's exhibit K includes a detailed accounting of the work performed by appellee's attorney. This court has repeatedly held that "[a] trial court may evaluate the work performed by an attorney in a domestic-relations action." *Groza-Vance* at ¶ 44, citing *Ward v. Ward,* 10th Dist. No. 85AP-61 (June 18, 1985). *See also Tonti v. Tonti,* 10th Dist. No. 03AP-494, 2004-Ohio-2529, ¶ 110; *McEnery v. McEnery*, 10th Dist No. 00AP-69 (Dec. 21, 2000). "The trial court may use its own knowledge and experience to determine the reasonableness of the amount claimed." *Groza-Vance* at ¶ 44, citing *Ward.*

{¶ 50} In the present case, the trial court indicated that it had thoroughly reviewed the case file and the fee history provided by appellee and found that the amount of time and work expended on the case was apparent. The trial court also considered factors pertaining to the reasonableness of attorney fees, and expressly found the fees to be customary for this locality and for the expertise required. The court further noted that appellee's counsel did not charge appellee for some of the time he worked on the case and at times used lower cost-per-hour associates. In addition, we note that the trial court only

awarded $5,000 of the $9,713.65 requested. *See Karales.* Upon review of the record, we find nothing indicating that the trial court acted unreasonably, arbitrarily, or unconscionably in awarding attorney fees of $5,000 on appellee's motion for contempt. Therefore, we find that the trial court did not abuse its discretion in entering that award.

{¶ 51} The second and third assignments of error are overruled.

## V. DISPOSITION

{¶ 52} Having overruled appellant's three assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).